T.C. Memo. 2005-226

UNITED STATES TAX COURT

KEITH D. HILEN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21768-03.                    Filed September 29, 2005.

<u>Brian G. Isaacson</u> and <u>Duncan C. Turner</u>, for petitioner.

<u>Sandra Veliz</u>, for respondent.


MEMORANDUM OPINION

HAINES, <u>Judge</u>:  This case is before the Court on the parties' cross-motions for summary judgment pursuant to Rule 121.[1]  The issue for decision is whether petitioner received

_____

    [1]  Unless otherwise indicated, Rule references are to the Tax Court Rules of Practice and Procedure, and section references are to the Internal Revenue Code, as amended.  Amounts are rounded to the nearest dollar.

gross income from the exercise of nonstatutory stock options in 1999.

## Background

At the time of the filing of the petition in this case, petitioner resided in Santa Rosa, California.

In May 1995, petitioner commenced work for Strategic Concepts Corp. Strategic Concepts Corp. later changed its name to InsWeb Corp. (InsWeb).

As part of his compensation package, petitioner received grants of options to purchase InsWeb common stock. Each grant gave petitioner the right to purchase a specified number of InsWeb shares for a specified price per share at a future date. To exercise his stock options, petitioner was required to notify InsWeb in writing and make arrangements to pay InsWeb an amount sufficient to cover the exercise price and any Federal, State, and local taxes InsWeb was required to withhold from wages.

On November 15, 1998, petitioner's employment with InsWeb was terminated. However, petitioner entered into a consulting relationship with InsWeb and was employed as a consultant under his separation agreement from November 15, 1998, to September 30, 1999. Because petitioner's employment was terminated, under the terms of his option agreements the last day that he was able to exercise his stock options was December 31, 1999.

On July 23, 1999, InsWeb had an initial public offering of its stock.

On August 26, 1999, petitioner signed a promissory note and a security agreement for a $250,000 loan from Comerica Bank-California (Comerica) to exercise his stock options, pledging the shares of InsWeb common stock he would receive as collateral. The security agreement provided that, if petitioner was found to be in default, Comerica could sell the collateral and apply the proceeds to the outstanding balance on the indebtedness. The security agreement also stated that after such sale the "Debtor shall remain liable for any deficiency, which it shall pay to Bank immediately upon demand". During 1999 and 2000, petitioner had a checking account with Comerica. At all times relevant to this case, Comerica and InsWeb were separate corporate entities.

On September 7, 1999, petitioner partially exercised one of his nonstatutory stock options, option No. 106, to purchase 20,000 shares of InsWeb common stock. The fair market value of the stock petitioner received was $572,500. Petitioner paid an exercise price to InsWeb of $26,000.

Petitioner exercised option No. 106 again on December 30, 1999, to purchase 11,250 shares of InsWeb common stock. The fair market value of the stock petitioner received was $285,469. The exercise price petitioner paid to InsWeb was $14,625.

On December 30, 1999, petitioner also exercised another of his nonstatutory stock options, option No. 17, to purchase 23,625 shares of InsWeb common stock. The fair market value of the stock petitioner received was $599,484. The exercise price petitioner paid to InsWeb was $11,813.

Petitioner paid InsWeb for the shares of common stock with checks from his Comerica checking account.

The stock certificates petitioner received included a restrictive legend that stated the shares could not be transferred, sold, or otherwise disposed of before January 18, 2000. Despite this, petitioner had the right to receive dividends and exercise his voting rights with respect to the shares.

On October 21, 2000, petitioner filed a Form 1040, U.S. Individual Income Tax Return, for 1999. Petitioner reported wages of $1,448,531. Attached to petitioner's income tax return was a Form W-2, Wage and Tax Statement, from InsWeb reporting wages of $1,435,031, which included the spread between the exercise prices and the fair market values of the stock he received when he exercised his nonstatutory stock options on September 7, 1999, and December 30, 1999.

Petitioner defaulted on his Comerica loan, and Comerica issued a notice of private sale of collateral dated December 21,

2000, to sell the shares of InsWeb common stock petitioner had pledged as collateral.

On February 7, 2001, petitioner filed a Form 1040X, Amended U.S. Individual Income Tax Return, for 1999 claiming a refund of $108,488. In the amended return petitioner reduced the amount of wage income from InsWeb by the spread between the fair market value and the exercise price he paid for shares of stock he received when he exercised his nonstatutory stock options on December 30, 1999.

On September 19, 2001, petitioner filed for chapter 7 bankruptcy in the Bankruptcy Court for the Northern District of California. In his bankruptcy schedules, petitioner listed Comerica as a creditor. Petitioner also stated in his schedules that Comerica had filed suit against him to collect on the promissory note.

Petitioner filed a second Form 1040X for 1999 on August 4, 2003, claiming a refund of $404,537. In the second amended return petitioner reduced the amount of wage income from InsWeb by the spread between the fair market value and the exercise price he paid for shares of stock he received when he exercised his nonstatutory stock options on September 7 and December 30, 1999.

On October 1, 2003, respondent sent petitioner a notice of deficiency in which respondent denied petitioner's claim for

refund and determined petitioner had received additional capital gains of $6,941 and had a tax deficiency of $1,470 for 1999.

On December 27, 2004, respondent filed a motion for partial summary judgment in respondent's favor upon the issue of whether petitioner received gross income from the exercise of his nonstatutory stock options in 1999.[2]

On December 30, 2004, petitioner filed a cross-motion for summary judgment.

### Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. <u>Fla. Peach Corp. v. Commissioner</u>, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there are no genuine issues of material fact and a decision may be rendered as a matter of law. Rule 121(b); <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); <u>Zaentz v. Commissioner</u>, 90 T.C. 753, 754 (1988). We conclude that there are no genuine issues of material fact as to whether petitioner received gross income from the exercise of nonstatutory stock options in 1999 and that a decision may be rendered as a matter of law.

---

[2] Petitioner has since conceded that he received $6,941 of capital gains in addition to the amount he had reported on his Federal tax return for 1999, which was the remaining issue not covered by respondent's motion for partial summary judgment. Therefore, respondent's motion shall be treated as a motion for summary judgment.

Under section 83, a taxpayer generally must recognize income when he exercises a compensatory stock option to the extent that the fair market value of the shares of stock transferred to him exceeds the exercise price he pays if the taxpayer's rights in the shares are transferable or not subject to a substantial risk of forfeiture. Sec. 83(a); Tanner v. Commissioner, 117 T.C. 237, 242 (2001), affd. 65 Fed. Appx. 508 (5th Cir. 2003); sec. 1.83-7(a), Income Tax Regs.

Section 83(a) provides:

> SEC. 83(a). General Rule.--If, in connection with the performance of services, property is transferred to any person other than the person for whom such services are performed, the excess of--
>
> > (1) the fair market value of such property (determined without regard to any restriction other than a restriction which by its terms will never lapse) at the first time the rights of the person having the beneficial interest in such property are transferable or are not subject to a substantial risk of forfeiture, whichever occurs earlier, over
>
> > (2) the amount (if any) paid for such property,
>
> shall be included in the gross income of the person who performed such services in the first taxable year in which the rights of the person having the beneficial interest in such property are transferable or are not subject to a substantial risk of forfeiture, whichever is applicable. * * *

Petitioner alleges that, because he exercised his nonstatutory stock options with "essentially nonrecourse financing", the recognition of his gain would be delayed until he

made a substantial payment on the debt.  Petitioner argues that the exercise of his nonstatutory stock options falls under section 1.83-3(a)(2), Income Tax Regs., which provides:  "The grant of an option to purchase certain property does not constitute a transfer of such property."  While the instant case concerns whether petitioner recognized income upon exercise of his nonstatutory stock options, not upon the grant of those options to him, petitioner's argument is that because he used a loan from Comerica to exercise his nonstatutory stock options, he, in effect, received options to buy the shares of stock.

Petitioner relies on the further clarification provided by the regulation:

> if the amount paid for the transfer of property is an indebtedness secured by the transferred property, on which there is no personal liability to pay all or a substantial part of such indebtedness, such transaction may be in substance the same as the grant of an option. * * * [Sec. 1.83-3(a)(2), Income Tax Regs.]

The regulation also suggests that "the extent to which the risk that the property will decline in value has been transferred, and the likelihood that the purchase price will, in fact, be paid" should be taken into consideration in determining whether a transfer has occurred.  Id.

In addition, petitioner cites section 1.83-3(a)(7), Example (2), Income Tax Regs., and argues that when an employee exercises stock options using nonrecourse debt, he does not bear the risk

of decline in value except to the extent he or she makes payments toward the principal of the debt.

Section 1.83-3(a)(7), Example (2), Income Tax Regs., is distinguishable from the present case. In the example, the employee received shares of stock from his employer in exchange for a nonrecourse note. In this case, the indebtedness was not owed to the employer, InsWeb, but to an unrelated third party. Also contrary to the example, petitioner was personally liable to Comerica.

The facts do not support petitioner's assertion that when he received his shares of InsWeb common stock, he in effect received only options to purchase InsWeb common stock at a future date. The amount petitioner paid InsWeb was not indebtedness of any nature. Rather, petitioner paid InsWeb in full by checks for the exercise prices as well as the required withholding amounts for taxes. In addition, the type of property transferred was shares of stock which he actually received. After exercising his nonstatutory stock options, petitioner had the right to receive dividends and the right to vote with respect to the shares of stock he purchased. Thus, petitioner did not receive another option but instead received shares of stock.

Furthermore, petitioner incurred personal liability to pay all of the debt secured by the shares. There was no provision in the promissory note or security agreement which limited

petitioner's liability to repay Comerica.  In fact, Comerica
filed suit to collect on its note, forcing petitioner into
chapter 7 bankruptcy.

Therefore, the shares of InsWeb common stock were
"transferred" to petitioner, within the meaning of section 1.83-
3(a), Income Tax Regs., when petitioner exercised his
nonstatutory stock options.

Petitioner next alleges the proper date of transfer for
determination of tax is January 18, 2000, instead of September 7
and December 30, 1999.  Petitioner argues his rights to the
shares of InsWeb common stock he acquired through exercising his
nonstatutory stock options were nontransferable and subject to a
substantial risk of forfeiture under section 1.83-3(c), Income
Tax Regs., because of the restrictive legend on the stock
certificates.  In his brief, petitioner relies on Robinson v.
Commissioner, 805 F.2d 38 (1st Cir. 1986), revg. 82 T.C. 444
(1984).

In Robinson v. Commissioner, supra at 40-41, the Court of
Appeals for the First Circuit held that a taxpayer's shares of
stock were subject to a substantial risk of forfeiture until a
1-year sellback provision lapsed.  The employer in Robinson could
have compelled its employee to sell the shares of stock back to
it at the price the employee paid at the time he exercised his

stock option if the employee had attempted to sell the shares of stock within a year of exercising his stock option.

Robinson is distinguishable from the instant case on its facts. Petitioner was not subject to a sellback provision that required him to return the shares of stock to InsWeb in the event he attempted to sell the stock before January 18, 2000.

For a taxpayer to be allowed to defer recognition of income, section 83(a) requires that shares of stock be both nontransferable and subject to a substantial risk of forfeiture. Petitioner was not prohibited from pledging his shares of InsWeb common stock as collateral. This may be taken as an indicium that petitioner's shares of InsWeb common stock, upon receipt, were transferable within the meaning of section 1.83-3(d), Income Tax Regs. See Tanner v. Commissioner, 117 T.C. 237, 242 (2001), affd. 65 Fed. Appx. 508 (5th Cir. 2003).

Caselaw establishes that a restriction on the transferability of property does not affect the timing of income inclusion or the amount of income required to be included under section 83 if the property is not subject to a substantial risk of forfeiture. See Pledger v. Commissioner, 71 T.C. 618 (1979), affd. 641 F.2d 287 (5th Cir. 1981); Sakol v. Commissioner, 67 T.C. 986 (1977), affd. 574 F.2d 694 (2d Cir. 1978); Koss v. Commissioner, T.C. Memo. 1989-330, affd. without published opinion 908 F.2d 962 (3d Cir. 1990).

A taxpayer's right to his shares of stock may be subject to a substantial risk of forfeiture if his right to full enjoyment of the shares of stock is conditioned upon the future performance of substantial services.  Sec. 83(c)(1).  The record is devoid of any facts showing that petitioner's right to full enjoyment of his shares of InsWeb common stock was conditioned upon the future performance of substantial services.

Petitioner also alleges a substantial risk of forfeiture existed because he was prohibited from transferring his shares as their fair market value declined.  Section 1.83-3(c)(1), Income Tax Regs., however, specifically provides that the risk that the value of property will decline during a certain period does not constitute a substantial risk of forfeiture.

The Court of Appeals for the Ninth Circuit, citing section 1.83-3(c)(1), Income Tax Regs., has noted:  "The risk of forfeiture analysis requires a court to determine the chances the employee will lose his rights in property transferred by his employer."  Theophilos v. Commissioner, 85 F.3d 440, 447 n.18 (9th Cir. 1996), revg. on another issue T.C. Memo. 1994-45.

Although petitioner was restricted from transferring his shares of stock until after January 18, 2000, the evidence shows that petitioner had no substantial risk of losing the rights to his shares of InsWeb common stock.  There is no evidence that InsWeb could have compelled him to return his shares of stock; no

sellback provision is present; nor is there any evidence that InsWeb could have compelled petitioner to forfeit his shares of stock.[3]

Finally, petitioner alleges that his inability to sell his shares of InsWeb common stock as their fair market value declined resulted in his beneficial interests in the shares having been "constructively forfeited" under section 1.83-1(e), Income Tax Regs.

Section 1.83-1(e), Income Tax Regs., provides:

If a person is taxable under section 83(a) when the property transferred becomes substantially vested and thereafter the person's beneficial interest in such property is nevertheless forfeited pursuant to a lapse restriction, any loss incurred by such person * * * upon such forfeiture shall be an ordinary loss to the extent the basis in such property has been increased as a result of the recognition of income by such person under section 83(a) with respect to such property.

Section 1.83-1(e), Income Tax Regs., is not applicable to petitioner's case. There is no evidence of forfeiture pursuant to a lapse restriction, nor was petitioner's right to the shares

---

[3] Under sec. 83(c)(3), if a taxpayer selling his shares of stock at a profit could be subject to a suit under the Securities Exchange Act of 1934, ch. 404, sec. 16(b), 48 Stat. 896 (current version at 15 U.S.C. sec. 78p(b)(2000)), "such person's rights in such property are (A) subject to a substantial risk of forfeiture, and (B) not transferable." Sec. 83(c)(3) does not apply beyond the initial 6-month period provided in sec. 16(b) of the Securities Exchange Act of 1934. Tanner v. Commissioner, 117 T.C. 237, 245-256 (2001), affd. 65 Fed. Appx. 508 (5th Cir. 2003).
     Petitioner does not claim that he would have been subject to liability under sec. 16(b) of the Securities Exchange Act of 1934 upon sale of his shares of InsWeb common stock at a profit.

of InsWeb common stock subject to a substantial risk of forfeiture.  Petitioner's shares of stock were not forfeited but were sold to pay Comerica when he filed for bankruptcy.

In consequence of the foregoing, we hold petitioner received gross income from the exercise of his nonstatutory stock options in 1999.

In reaching our holdings herein, we have considered all arguments made, and to the extent not mentioned above, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order</u>

<u>and decision will be entered.</u>