T.C. Memo. 2006-162

UNITED STATES TAX COURT

ROBERT C. AND GAIL K. RACINE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17633-04.                    Filed August 14, 2006.

<u>Don Paul Badgley</u> and <u>Brian Gary Isaacson</u>, for petitioners.

<u>Kirk M. Paxson</u> and <u>William C. Schmidt</u>, for respondent.

MEMORANDUM OPINION

GOEKE, <u>Judge</u>:  Respondent determined a $514,462 deficiency
in petitioners' Federal income tax and determined that
petitioners are liable for a $102,892.40 accuracy-related penalty
under section 6662(a)[1] for 2000.  We are asked to decide whether

---

[1]All section references are to the Internal Revenue Code in
effect for the year at issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure, unless otherwise
indicated.

petitioners received income in 2000 when petitioner Gail Racine (Mrs. Racine) exercised her nonstatutory stock options through a margin account and whether petitioners are liable for the accuracy-related penalty under section 6662(a) for 2000.  We hold that petitioners received income in 2000 when Mrs. Racine exercised her stock options, but petitioners are not liable for the accuracy-related penalty for 2000.

## Background

The parties agree that there is no genuine issue of material fact regarding the stock option issue and that a decision may be rendered as a matter of law.  The facts concerning the accuracy-related penalty have been fully stipulated pursuant to Rule 122.[2] These facts and the accompanying exhibits are incorporated herein by this reference.  Petitioners, husband and wife, resided in Elburn, Illinois, at the time they filed the petition.

Mrs. Racine was employed by Allegiance Telecom, Inc. (Allegiance) during the 2000 tax year.  As a part of her compensation package, she was granted nonstatutory employee stock options to acquire Allegiance shares.  Mrs. Racine used her stock

---

[2]This case was originally before the Court for hearing petitioner's motion for partial summary judgment and respondent's cross-motion for summary judgment.  At the hearing, a joint motion was filed for leave to submit case under Rule 122.  The parties agreed that the accuracy-related penalty portion of this case could be fully stipulated for decision.  At the conclusion of the hearing, the Court took the parties' respective motions under advisement.

option grants as collateral to secure a nonrecourse loan to exercise her stock options through CIBC Oppenheimer (CIBC), a brokerage firm affiliated with Allegiance.

CIBC was an investor and market maker in Allegiance stock. CIBC provided Mrs. Racine with a loan based solely on the collateral value of the exercised shares for 100 percent of the exercise price plus withholding taxes to exercise her employee stock options. The nonrecourse loan secured by Mrs. Racine imposed conditions including margin debt requirements, loan collateral requirements, and margin call requirements. Pursuant to the loan security agreement, the stock was required to be held by the lender until the debt was paid in full. If the stock declined below a specified loan-to-value ratio and additional funds were not provided, the collateral could be liquidated by the lender.

In 2000, Mrs. Racine used margin debt from CIBC to exercise her stock options on three separate occasions. Mrs. Racine's purchases, including the exercise prices and the amount of withholding taxes for each purchase funded through the margin debt, are as follows:

| Purchase date | Shares purchased | Exercise price | Tax withholding | Market value of shares |
|---|---|---|---|---|
| Mar. 9, 2000 | 20,210 | $45,579.66 | $584,496.16 | $1,695,113.75 |
| Apr. 12, 2000 | 2,524 | 6,616.39 | 53,524.27 | 151,124.50 |
| Aug. 7, 2000 | 2,523 | 6,614.75 | 45,536.28 | 126,465.38 |

Mrs. Racine had legal title to her Allegiance shares subject to the interest of CIBC securing the repayment of the loans. In addition, she had the right to receive dividends with respect to this stock, to vote the shares, and to use the shares as collateral.

During the 2000 year, the market price of Allegiance stock began to decline. In response to this decline and the subsequent margin calls, Mrs. Racine's shares were liquidated.

On November 22, 2000, Mrs. Racine liquidated 2,000 Allegiance shares for their average fair market value of $17.92.

On November 29, 2000, Mrs. Racine's financial adviser at CIBC liquidated 16,921 Allegiance shares for their average fair market value of $15.34 in order to pay down her margin debt.

On May 2, 2001, Mrs. Racine's financial adviser at CIBC liquidated 1,836 Allegiance shares for their average fair market value of $20.41 in order to pay down her margin debt.

Petitioners' 2000 Tax Return

Petitioners timely filed their Federal income tax return for 2000. This original return showed wages from Allegiance on Mrs. Racine's Form W-2, Wage and Tax Statement, of $2,037,800, attributable to her salary and stock options. The return reported $774,147 in tax, $563,855 in payments, and tax due of $210,292. Petitioners did not submit the total amount due with their 2000 tax return. Instead, petitioners submitted a payment

of $64,000 with their return.[3]  Respondent assessed the tax reported on the return.

On November 21, 2003, petitioners filed a Form 1040X, Amended U.S. Individual Income Tax Return, for the 2000 year reporting a tax liability of $259,685 and requesting a refund of $368,170.[4]  The refund was based upon Mrs. Racine's reduction of wage income by the spread (between fair market value of the stock and the option exercise price) generated by the exercise of her nonstatutory stock options.  Petitioners contended that the exercise of these options should not have been taxed on the value at the date of exercise according to section 1.83-3(a)(2) and (7) Example (2), Income Tax Regs., because petitioners exercised their shares with nonrecourse debt secured by the stock and did not have their own capital at risk.  The requested refund amount of $368,170, plus the statutory interest of $59,605.65, was paid to petitioner on January 12, 2004.[5]

---

[3]Accompanying this underpayment was a letter outlining how petitioners intended to pay the balance due.

[4]This amount was obtained by taking the difference between payment on the initial return ($563,855), the new tax liability ($259,685), and then adding the subsequent payment made ($64,000).

[5]In respondent's response to petitioners' motion for partial summary judgment, respondent alleges that after a review was conducted by IRS Appeals Officer S. Danlowycz, the refund payment was erroneously made to petitioners.

Petitioners are not lawyers or accountants and are not educated in U.S. tax laws.  They retained and relied upon Richard Steinauer, a tax attorney with the Isaacson law firm, to prepare the 2000 amended tax return and a Form 8275, Memorandum of Law.

In May 2004, respondent opened an examination of petitioners' 2000 joint income tax return and issued a notice of deficiency dated July 20, 2004.  Respondent determined pursuant to section 83 that petitioners should have included the spread between the fair market value of the shares and the exercise price for the shares as gross income for the 2000 taxable year.[6] Respondent accordingly determined that $774,147 was the correct tax liability, rather than the $259,685 reported on the amended return, resulting in a $514,462 deficiency.  Respondent also determined that petitioners were liable for the accuracy-related penalty of $102,892.40 under section 6662(a).  Petitioners timely filed a petition for review with this Court.

## Discussion

### I.  Receipt of Income on Exercise of Option

We are asked to decide whether petitioners received income when Mrs. Racine exercised her options through a margin account in 2000.  Petitioners argue that exercising an option through a

---

[6]In petitioners' original tax return for the year 2000, the amount of tax calculated, $774,147, was the same as the respondent's examination revealed.  The issue of the case arises with petitioners' amended tax return, which was filed in 2003.

margin account is properly treated as the grant of another option to buy the shares and that petitioners were thus not taxable when Mrs. Racine exercised her options.  Instead, petitioners contend that none of their own capital was at risk at the time the option was exercised.  Thus, according to petitioners, they should be subject to tax only when the shares were sold to pay the margin debt.

Respondent argues that the exception treating the exercise of an option as the creation of another option does not apply and that the income was properly reported when Mrs. Racine exercised her options rather than when the shares were liquidated to pay off margin debt.  We agree with respondent.

The facts of the case are very similar to a case decided by this Court.  See Facq v. Commissioner, T.C. Memo. 2006-111.[7]  In Facq, the taxpayer exercised stock options granted by his employer using the stock as collateral in obtaining a loan from a third party.  Id.  The stock declined and eventually the taxpayer was forced to liquidate the stock in order to meet the margin

---

[7]See also Palahnuk v. United States, 70 Fed. Cl. 87 (2006) (held that income from stock options exercised through margin loan was properly reported in tax year in which the options were exercised); United States v. Tuff, 359 F. Supp. 2d 1129 (W.D. Wash. 2005) (shares of stock were transferred to taxpayer, as required for shares to be taxable, at time taxpayer used margin loan from broker to exercise stock options); Facq v. United States, 363 F. Supp. 2d 1288 (W.D. Wash. 2005) (taxpayer's exercise of stock options was a taxable event); Miller v. United States, 345 F. Supp. 2d 1046 (N.D. Cal. 2004) (taxpayer's exercise of stock options was a taxable event).

requirements.  <u>Id.</u>  The taxpayer argued that exercising his option was not taxable.  <u>Id.</u>  In <u>Facq</u>, a general framework was set forth to assess the rule of taxability of options to understand the arguments presented by the taxpayer in that case. <u>Id.</u>  This general framework will be applied to the identical arguments of petitioners in this case.

A.    <u>General Rule Regarding Taxation of Stock Options</u>

In general, when an employee receives a nonstatutory stock option[8] that does not have a readily ascertainable fair market value, the employee is not taxed on the receipt of the option at that time, although it is part of his or her compensation.  Sec. 83(e)(3).  Instead, the employee is taxed when he or she exercises the option and receives shares, if the shares have been transferred to, and are substantially vested in, the employee. Sec. 83(a); <u>Tanner v. Commissioner</u>, 117 T.C. 237, 242 (2001), affd. 65 Fed. Appx. 508 (5th Cir. 2003); <u>Facq v. Commissioner</u>, <u>supra</u>; <u>Hilen v. Commissioner</u>, T.C. Memo. 2005-226; sec. 1.83-3(a), Income Tax Regs.  The taxpayer must recognize income in the

---

[8]Statutory stock options are compensatory options that meet certain criteria and are treated differently under the Code.  See sec. 422.  Stock options that do not meet the requirements of statutory stock options are nonstatutory stock options.

amount that the fair market value of the shares he or she receives exceeds the exercise price that he or she pays. Sec. 83(a).

For the taxpayer to be taxed at the time he or she exercises the option and receives the shares, the shares must be transferred to and substantially vested in the employee. Sec. 1.83-3(a), Income Tax Regs. A transfer to the employee occurs when the employee acquires a beneficial ownership interest in the property. Facq v. Commissioner, supra; Miller v. United States, 345 F. Supp. 2d 1046, 1049 (N.D. Cal. 2004); sec. 1.83-3(a), Income Tax Regs. The shares are substantially vested in the employee when the shares are either transferable or not subject to a substantial risk of forfeiture. Facq v. Commissioner, supra; Miller v. United States, supra; sec. 1.83-3(b), Income Tax Regs.

The shares are subject to a substantial risk of forfeiture when the owner's rights to their full enjoyment are conditioned upon the future performance of substantial services by any individual. Sec. 83(c)(1); Facq v. Commissioner, supra; Miller v. United States, supra; sec. 1.83-3(c)(1), Income Tax Regs. Whether a risk of forfeiture is substantial depends on the facts and circumstances. Sec. 1.83-3(c)(1), Income Tax Regs. The shares are transferable only if a transferee's rights in the property are not subject to a substantial risk of forfeiture.

Sec. 83(c)(2); sec. 1.83-3(d), Income Tax Regs.  Property is transferable if the person receiving the property can sell, assign, and pledge his or her interest in the property to any person and if the transferee is not required to give up the property in the event a substantial risk of forfeiture materializes.  Sec. 1.83-3(d), Income Tax Regs.

In this case, there was a transfer of the shares to Mrs. Racine, and she acquired beneficial ownership of the shares when the options were exercised in 2000.  She obtained legal title to the shares and was entitled to receive dividends, to vote the shares, and to pledge the shares as collateral.  Mrs. Racine's rights were subject only to CIBC's interest as the margin account provider.  See sec. 1.83-3(a), Income Tax Regs.

Thus, unless an exception to the general rule applies, the shares would be treated as transferred and thus taxable to Mrs. Racine when she exercised her options because she acquired beneficial ownership of the Allegiance shares.  Facq v. Commissioner, supra; see Miller v. United States, supra at 1050.  Accordingly, the shares would be taxable when Mrs. Racine exercised her options in 2000.  Petitioners argue that this is not the case and an exception to the general rule applies.  If petitioners are correct, there would be no transfer, and thus Mrs. Racine would not be subject to tax in 2000.  See sec. 83(a).

B.   Exception Treating Certain Transfers as the Grant of an Option

An exception to the rule treats certain exercises of options and receipts of shares as the grant of another option instead of the transfer of shares.  Sec. 1.83-3(a)(2), Income Tax Regs.  The exception treats the transaction as another option where the amount paid for the exercise is a debt secured by the shares on which there is no personal liability.  Id.  The determination of whether a transaction should be viewed as a grant of an option rather than a transfer is dependent upon the facts and circumstances.  Id.  Courts look to such factors as (1) the type of property involved, (2) the extent to which the risk the property will decline in value has been transferred, and (3) the likelihood that the purchase price will be paid.  Id.

Petitioners argue that their situation is the same as that described in section 1.83-3(a)(7), Example (2), Income Tax Regs. (Example 2), where an employee pays his or her employer for shares by giving the employer a note for the purchase price on which the employee has no personal liability.  Petitioners contend that because the employee in Example 2 is treated as having received an option, petitioners should also be treated as having received an option.

Petitioners maintain that the key factor involved is whether an employee has his or her own capital at risk.  If there is no capital risk, according to petitioners, the transaction is

nothing more than the grant of another option regardless of whether the debt is to the employer or to a margin account provider. According to petitioners, Congress intended to deny capital gains treatment to those who do not make any capital investment in their options. See Palahnuk v. United States, 70 Fed. Cl. 87, 92 (2006). Thus, according to petitioners, because Mrs. Racine exercised her options using a loan from CIBC and therefore had no capital at risk, no transfer occurred until CIBC sold the stock to satisfy the margin calls on Mrs. Racine's account.

We disagree with petitioners' position and instead adopt the reasoning and conclusion reached in Facq v. Commissioner, T.C. Memo. 2006-111.[9] Contrary to petitioner's reading, Example 2 in the regulations can be distinguished from the current circumstances. Example 2 deals with what the employer transferred or received in exchange, rather than what the employee has at risk. Facq v. Commissioner, supra; Palahnuk v. United States, supra. Example 2 describes an alternative method of providing an employee an option to purchase property. Facq v. Commissioner, supra; Palahnuk v. United States, supra; sec. 1.83-3(a)(7), Example (2), Income Tax Regs. Rather than grant the

_____

[9]The circumstances of the exercised options and the arguments made by petitioners in this case are identical to those in Facq v. Commissioner, T.C. Memo. 2006-111, and thus there is a clear precedent to be followed.

employee an option, the employer makes stock available to the employee in exchange for a note.  Sec. 1.83-3(a)(7), Example (2), Income Tax Regs.  Although the transaction is referred to as a sale, in reality the employee has received an option.  Id.  The employee may acquire the stock later if the employee chooses by paying the note.  Palahnuk v. United States, supra; sec. 1.83-3(a)(7), Example (2), Income Tax Regs.

Petitioners disregard the fact that in Example 2 it is not certain whether the employee will pay the debt to the employer (i.e., exercise the employee's option to purchase the stock).  Facq v. Commissioner, supra; Palahnuk v. United States, supra.  In this case, unlike Example 2, it was certain when Mrs. Racine exercised her options that Allegiance would receive the cash in full satisfaction of the exercise price.  Mrs. Racine borrowed money from CIBC, not Allegiance, to exercise her options.  If she failed to pay the loan, the shares would be (and eventually were) forfeited to the margin account provider, who would liquidate the shares.  Mrs. Racine's shares in Allegiance would not go back to Allegiance regardless of what Mrs. Racine did.  See Palahnuk v. United States, supra.  The transaction at issue in this case is therefore not similar to the transaction described in Example 2.  See Facq v. Commissioner, supra; Hilen v. Commissioner, T.C. Memo. 2005-226; Palahnuk v. United States, supra; sec. 1.83-3(a)(7), Example (2), Income Tax Regs.

Furthermore, the transaction in this case is not, in substance, the same as a grant of an option. See <u>Hilen v. Commissioner</u>, <u>supra</u>; sec. 1.83-3(a)(2), Income Tax Regs. As noted previously, we have found that the purchase of stock with third-party margin debt under similar circumstances is not in substance the same as the grant of an option. <u>Facq v. Commissioner</u>, <u>supra</u>; <u>Hilen v. Commissioner</u>, <u>supra</u>.[10] When we consider the type of property involved, the extent to which the risk that the property will decline in value has been transferred, and the likelihood the purchase price will be paid, we find that Mrs. Racine's transaction was not in substance the same as the grant of an option. Sec. 1.83-3(a)(2), Income Tax Regs.

As in <u>Facq v. Commissioner</u>, <u>supra</u>, the type of property involved is publicly traded shares of stock. Mrs. Racine had title to the shares (shares were in a margin account and thus subject to interest of CIBC), and had the right to receive dividends, to vote the shares, and to pledge the shares. In fact, Mrs. Racine did pledge the shares to CIBC as collateral for the margin loans. This factor weighs against finding that the

---

[10]See also <u>Palahnuk v. United States</u>, 70 Fed. Cl. 87 (2006); <u>United States v. Tuff</u>, 359 F. Supp. 2d 1129 (W.D. Wash. 2005); <u>Facq v. United States</u>, 363 F. Supp. 2d 1288 (W.D. Wash. 2005); <u>Miller v. United States</u>, 345 F. Supp. 2d 1046 (N.D. Cal. 2004).

transaction is, in substance, similar to the grant of an option. See id.

Next we consider whether the risk that the property will decline in value has been transferred. Sec. 1.83-3(a)(2), Income Tax Regs. The focus here should not be on whether the taxpayer is personally liable, as petitioners suggest, but on whether the risk was transferred from the employer. Facq v. Commissioner, supra. When Allegiance transferred the shares, it no longer bore the risk of a decline in value. The risk was borne by either Mrs. Racine or CIBC. Which one bore the risk is irrelevant because, regardless, Allegiance no longer had the risk because of the transfer. Facq v. Commissioner, supra; Palahnuk v. United States, supra. Accordingly, this factor weighs against finding that the substance of the transaction was the same as the grant of an option. Palahnuk v. United States, supra.

Finally, we consider the likelihood the purchase price will be paid. Sec. 1.83-3(a)(2), Income Tax Regs. This factor examines whether the purchase price for the property is paid, not whether the indebtedness incurred to pay the purchase price will be paid. Facq v. Commissioner, T.C. Memo. 2006-111; Facq v. United States, 363 F. Supp. 2d 1288 (W.D. Wash. 2005); Hilen v. Commissioner, supra; Miller v. United States, 345 F. Supp. 2d 1046 (N.D. Cal. 2004). Allegiance received the exercise price of the shares (plus funds from Mrs. Racine's margin account to fund

the tax withholding payments) when she exercised her options. Consequently, this factor also weighs against finding that the substance of the transaction was the same as the grant of an option.  Facq v. Commissioner, supra; Hilen v. Commissioner, supra.

In summary, the facts and circumstances indicate that in substance, Mrs. Racine's use of her margin account to exercise her options to buy Allegiance stock was not the same as the grant of an option.

Therefore, we find that a transfer of stock occurred under section 83 when Mrs. Racine exercised her stock option in 2000 and that the exception treating some transfers as grants of options does not apply.  Accordingly, we sustain respondent's determination that Mrs. Racine received income in 2000 when she exercised her options.

## II.  Accuracy-Related Penalty

We next consider whether petitioners are liable for the accuracy-related penalty.

Section 6662 imposes an accuracy-related penalty on the portion of an underpayment attributable to negligence or disregard of the rules or regulations.  Sec. 6662(b)(1).  The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws or to exercise ordinary and reasonable care in the

preparation of a tax return.  Sec. 6662(c); Gowni v. Commissioner, T.C. Memo. 2004-154.  The term "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c); sec. 1.6662-3(b)(1) and (2), Income Tax Regs.  An accuracy-related penalty will not be imposed with respect to any portion of an underpayment as to which the taxpayer acted with reasonable cause and in good faith.  Sec. 6664(c)(1); sec. 1.6664-4(b), Income Tax Regs.  The Commissioner has the burden of production with respect to the penalty, but the taxpayer retains the burden of establishing reasonable cause.  Sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438 (2001).

The determination of whether a taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances, including the taxpayer's efforts to assess his or her proper tax liability, the knowledge and experience of the taxpayer, and the reliance on the advice of a professional.  Sec. 1.6664-4(b)(1), Income Tax Regs.  When a taxpayer selects a competent tax adviser and supplies him or her with all relevant information, it is consistent with ordinary business care and prudence to rely upon the adviser's professional judgment as to the taxpayer's tax obligations.  United States v. Boyle, 469 U.S. 241, 250-251 (1985).  Moreover, a taxpayer who seeks the advice of an adviser does not have to challenge the adviser's

conclusions, seek a second opinion, or try to check the advice by reviewing the tax code himself or herself.  Id.

Mrs. Racine was not educated in U.S. tax law and decided to seek professional assistance in preparing petitioners' amended return.  She retained Richard Steinauer, a tax attorney with the Isaacson law firm, and relied upon him to file accurately and properly an amended return for 2000.  There is nothing in the record to indicate that it was unreasonable for Mrs. Racine to accept this guidance and not seek a second opinion.  See id. (such a requirement would nullify the purpose of seeking the advice of an expert in the first place).  In addition, petitioners filed their original tax return and amended tax return at a time when cases involving realized gain on stock purchased with third-party margin debt had yet to be litigated.[11]  Therefore this issue was novel at the time the returns were filed, and we find that petitioners had reasonable cause and acted in good faith in excluding the gain when they filed their amended return.  See Williams v. Commissioner, 123 T.C. 144 (2004) (no penalty imposed in case involving issue of first impression and interrelationship between complex tax and bankruptcy laws).

_____

[11]Petitioners timely filed their return for 2000 and an amended return in 2003, while the early cases involving the issue of realized gain on stock purchased with third-party margin debt were decided after 2003.

We find, therefore, that petitioners have met the burden of reasonable cause and acted in good faith when they excluded their gains.

## Conclusion

After careful consideration of the facts and circumstances of this case, we sustain respondent's deficiency determination but find that petitioners are not liable for the accuracy-related penalty under section 6662(a).

To reflect the foregoing,

<u>Order and decision will be entered for respondent as to the deficiency but for petitioners as to the penalty.</u>