**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**January 9, 2007**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-51372

_____

RICARDO CIDALE; LESLIE CIDALE,

Plaintiffs-Appellants,

v.

UNITED STATES OF AMERICA,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Western District of Texas

---

Before JONES, Chief Judge, and DAVIS and GARZA, Circuit Judges.

EDITH H. JONES, Chief Judge:

Ricardo and Leslie Cidale appeal the district court's grant of summary judgment to the United States on their claim to recover income taxes erroneously assessed. The issue in this appeal is whether a taxable transfer occurred on the date the taxpayers' non-statutory employee stock options were exercised, when they financed the purchase with margin debt, or on the date the shares were sold. Relying on the district court's analysis and a growing body of caselaw, we hold that the exercise date is controlling and thus AFFIRM.

## I. BACKGROUND

On January 31, 2000, Cidale exercised stock options granted by his employer, RealNetworks, by borrowing funds from his broker, Salomon Smith Barney ("Smith Barney"). He paid $356,256 to purchase 24,000 shares of stock, which then had a fair market value exceeding $3 million. Because an employee who exercises stock options must pay withholding tax on the difference between the exercise price and the fair market value of the stock on the date the options are exercised, the $3,416,256 difference created a tax liability of $1,010,811.79. Cidale's tax liability plus the stock purchase price meant he had to pay RealNetworks $1,367,067.79 to exercise his stock options. Pursuant to the margin loan agreement between Cidale and Smith Barney, the broker paid this fee to RealNetworks with a check drawn on Cidale's margin account.

The margin agreement stated that Cidale maintained all incidents of ownership of the shares, including the right to sell, vote, and pledge the shares, and to receive dividends, subject to the broker's security interest in all of Cidale's accounts. Under the agreement, Smith Barney could sell the stock as collateral to pay off Cidale's loan, but the Cidales remained personally liable for any deficiency in the event that proceeds for the shares did not repay the loan.

The Cidales reported the stock options as income for the 2000 tax year. In July 2002, they filed a Form 1040X and an amended tax return, seeking a refund of federal income taxes paid in the final amount of $274,941 plus interest. They claimed that

the taxes should have been assessed when the loan was repaid by liquidation of Cidale's interest in his RealNetworks stock in September 2000, rather than on the date he exercised his stock options in January 2000. They argued that no taxable income arose at the date of exercise of the stock options because he borrowed the purchase money from Smith Barney. Needless to say, the stock was worth less, and the resulting tax was less, if the taxable transfer date was in September rather than January. The IRS rejected the refund claim.

The Cidales sued the United States to recover a refund based on their theory about the exercise date for the stock options. After the district court's adverse decision, they timely appealed.

## II. DISCUSSION

This court reviews the district court's grant of summary judgment <u>de</u> <u>novo</u>, applying the same legal standards as the district court. <u>Mayo v. Hartford Life Ins. Co.</u>, 354 F.3d 400, 403 (5th Cir. 2004). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986).

Under I.R.C. § 83, in general terms, an employee is taxed when he exercises nonqualified stock options if the shares (1) have been transferred to and (2) have substantially vested in the employee. See TREAS. REG. § 1.83-3(a); Racine v. Comm'r, 92 T.C.M. 100, 102 (2006). The tax equals the amount by which the fair market value of the shares exceeds the exercise price. "[A] transfer of property occurs when a person acquires a beneficial ownership interest in such property." TREAS. REG. § 1.83-3(a)(1). Rights "are transferable only if the rights in such property of any transferee are not subject to a substantial risk of forfeiture," and if the transferee can sell, assign and pledge his interest in the property. I.R.C. § 83(c)(2); see also Racine, 92 T.C.M. at 102. "Property is substantially vested for such purposes when it is either transferable or not subject to a substantial risk of forfeiture." TREAS. REG. § 1.83-3(b). Rights are subject to a substantial risk of forfeiture "if such person's rights to full enjoyment of such property are conditioned upon the future performance of substantial services by any individual." I.R.C. § 83(c)(1).

The Cidales argue that no taxable transfer occurred when Ricardo Cidale exercised stock options with margin debt because his own capital was not at risk. They assert that he did not have "beneficial ownership" of the shares until the margin loan was repaid because he did not bear any risk of loss. Citing Example 2

4

in Treasury Regulation § 1.83-3(a)(7),[1] they contend that Ricardo Cidale's use of margin debt is treated as the grant of another option to buy shares and is not a taxable event.  Accordingly, he should have been taxed when the shares were sold to repay the margin debt.

The United States Tax Court recently rejected all of the arguments that the Cidales now assert.  See Racine v. Comm'r, 92 T.C.M. 100, 102 (2006); Facq v. Comm'r, 91 T.C.M. 1201 (2006).  In Racine, the court held that a taxable transfer occurred under I.R.C. § 83 when the taxpayer exercised her stock options because the shares were transferred and she acquired beneficial ownership of the shares, even though she purchased the shares through a margin loan.  92 T.C.M. at 104.  When she exercised the options, the taxpayer had legal title to the shares and was entitled to all the incidents of ownership, including the right to receive dividends and to pledge the shares as collateral.  Id. at 102-03.

---

[1]     Example 2 states:

On November 17, 1972, W sells to E 100 shares of stock in W corporation with a fair market value of $10,000 in exchange for a $10,000 note without personal liability.  The note requires E to make yearly payments of $2,000 commencing in 1973.  E collects the dividends, votes the stock and pays the interest on the note.  However, he makes no payments toward the face amount of the note.  Because E has no personal liability on the note, and since E is making no payments towards the face amount of the note, the likelihood of E paying the full purchase price is in substantial doubt.  As a result E has not incurred the risks of a beneficial owner that the value of the stock will decline.  Therefore, no transfer of the stock has occurred on November 17, 1972, but an option to purchase the stock has been granted to E.

TREAS. REG. § 1.83-3(a)(7) (Example (2)).

5

The court rejected the taxpayer's argument, founded on Example 2 to Treasury Regulation § 1.83-3(a)(7), that she received an option when she used her margin account to exercise the options. Id. at 103-04. There is no material difference between Racine and this case, and while Racine does not bind this court, we find its analysis compelling. The taxpayers' arguments fail to perceive the distinction between the employer's receipt of full payment for the options, which creates the taxable event, and the employee's separate obligation to a third party for the loan of the purchase price.

Every other court to have addressed this issue has rejected the Cidales' arguments. See United States v. Tuff, 469 F.3d 1249 (9th Cir. 2006), aff'g 359 F. Supp. 2d 1129 (W.D. Wash. 2005); Miller v. United States, No. 04-17470, 2006 WL 3487016 (9th Cir. Dec. 4, 2006) (mem.), aff'g 345 F. Supp. 2d 1046 (N.D. Cal. 2004); Facq v. United States, 363 F. Supp. 2d 1288, 1292 (W.D. Wash. 2005); see also Palahnuk v. United States, 70 Fed. Cl. 87 (Fed. Cl. 2006).

The district court properly determined that the Cidales owed taxes on Ricardo Cidale's stock options on the date the options were exercised, not the date on which he repaid the margin loan. The RealNetworks shares were transferred and substantially vested in Cidale on the date of exercise, because he then acquired beneficial ownership of the shares and had the right to receive any dividends and vote the stock. His capital was at risk under the

terms of the margin agreement.  Accordingly, a taxable event occurred when Ricardo Cidale exercised his stock options with margin debt.

**AFFIRMED.**