127 T.C. No. 13


UNITED STATES TAX COURT


ANTHONY J. KADILLAK, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2860-04L.                    Filed November 7, 2006.


        P, as a sales assistant with Ariba Technologies,
Inc. (Ariba), received incentive stock options (ISOs)
subject to an employment termination restriction,
whereby Ariba had the right to repurchase nonvested
stock on the date of termination for its exercise
price.  On Apr. 5, 2000, P exercised his ISOs and was
transferred all vested stock.  The nonvested stock was
placed in escrow and transferred to P as the shares
vested on a monthly basis over 4 years.  P timely filed
a sec. 83(b), I.R.C., election in May 2000 for the
exercised ISOs.  P's employment with Ariba was
terminated on Apr. 4, 2001.  Ariba timely exercised its
repurchase rights with respect to nonvested stock.

        P filed a Federal income tax return for 2000
reporting the gain resulting from the exercise of the
ISO on the vested and the nonvested stock for
alternative minimum tax (AMT) purposes.  P subsequently
submitted amended returns for 2000 and 2001 in which he
claimed he was not subject to AMT for nonvested stock

because the sec. 83(b), I.R.C., election was invalid. P also claimed that the capital loss limitations of secs. 1211 and 1212, I.R.C., do not apply for purposes of the AMT so that he may use his capital losses realized in 2002 to reduce his alternative minimum taxable income (AMTI) in 2000. R rejected P's amended returns and issued to P a notice of Federal tax lien and notice of intent to levy. After a sec. 6330, I.R.C., hearing, the Appeals Office rejected P's arguments, and P timely petitioned this Court for review of R's lien and levy.

Held: P's sec. 83(b), I.R.C., election required him to recognize as AMTI the excess of his vested and nonvested stock's fair market value (FMV) over its exercise price on the date of exercise. Held, further: P acquired beneficial ownership of the nonvested stock when he exercised his ISOs; thus, the nonvested shares were transferred to P within the meaning of sec. 1.83-3(a)(1), Income Tax Regs. Held, further: P was not required to return the nonvested stock upon the happening of an event that was certain to occur pursuant to sec. 1.83-3(a)(3), Income Tax Regs.; thus, the nonvested shares were properly transferred to P within the meaning of sec. 1.83-3(a)(1), Income Tax Regs. Held, further: P is not entitled to a deduction under sec. 1341(a), I.R.C. Held, further: The capital loss limitations of secs. 1211 and 1212, I.R.C., apply for purposes of calculating alternative minimum taxable income. Held, further: P may not carry back alternative minimum tax net operating losses to reduce his AMTI in 2000.

Don Paul Badgley, Duncan C. Turner, and Brian G. Isaacson, for petitioner.

Kirk M. Paxson, Julie L. Payne, and William C. Schmidt, for respondent.

- 3 -

OPINION

HAINES, Judge:  Petitioner filed a petition with this Court in response to Notices of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 for 2000 and 2001 (years at issue).  Pursuant to section 6330(d), petitioner seeks review of respondent's determinations.[1]

The remaining issues for decision are:

1.  Whether petitioner's section 83(b) election for 2000 was valid.  This Court holds the section 83(b) election was valid.

2.  Whether petitioner is entitled to an alternative minimum tax (AMT) ordinary loss pursuant to section 1341 for stock forfeited under a lapse provision.  This Court holds he is not so entitled.

3.  Whether petitioner may carry back capital losses pursuant to section 1211 to reduce the amount of his alternative minimum taxable income (AMTI) for 2000.  This Court holds he may not.

4.  Whether petitioner may carry back alternative minimum tax net operating losses (AMTNOL) to reduce the amount of his AMTI for 2000.  This Court holds he may not.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code (Code), as amended.  All Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.  Amounts are rounded to the nearest dollar.

## Background

The parties submitted this case fully stipulated pursuant to Rule 122. The parties' stipulations of facts, with attached exhibits, are incorporated herein by this reference. At the time the petition was filed, petitioner resided in San Francisco, California.

A. Ariba Technologies, Inc., Incentive Stock Options

From April 24, 1997, through April 4, 2001, petitioner was employed as a sales assistant with Ariba Technologies, Inc. (Ariba) at an annual salary of $38,000.

### 1. Grants and Exercise of Stock Options

In addition to his salary, on July 21, 1997, Ariba issued to petitioner option No. 34 under its 1996 Stock Option Agreement (agreement) and 1996 Stock Option Plan (plan). Option No. 34, which qualified as an incentive stock option (ISO), granted petitioner the option to acquire 2,000 shares of Ariba common stock.[2]

On March 2, 1998, Ariba issued option No. 117 to petitioner under its agreement and plan. Option No. 117, which qualified as an ISO, granted petitioner the option to acquire 2,000 shares of

---

[2] The stock granted under option No. 34 will not be discussed in this Opinion. When the ISOs granted under option No. 34 were exercised, both the stock's purchase price and FMV were 20 cents per share. As a result, no AMTI gain or loss was generated upon the exercise of these shares or their subsequent sale.

Ariba common stock at $1.50 per share. The option was exercisable any time after the grant date.

Pursuant to option No. 117 petitioner's right to own the Ariba stock was subject to an employment termination restriction whereby, if petitioner's employment terminated for any reason before petitioner's rights in the stock fully vested, Ariba had the right to repurchase all the nonvested stock. Petitioner's vesting commencement date was February 1, 1998. Upon petitioner's completion of 1 year of employment, his rights to 25 percent of the stock under option No. 117 vested, and Ariba's right to repurchase those shares lapsed. Petitioner's rights in the remaining shares under option No. 117 vested on a monthly basis (approximately 667 shares per month) ending on February 1, 2002. As petitioner's rights in the stock vested, the employment restriction no longer applied, and Ariba's right to repurchase the stock lapsed.

In March 1999, April 1999, December 1999, and April 2000, Ariba's common stock was subject to a 2-for-1 stock split. As a result, the number of shares granted under option No. 117 increased from 2,000 to 32,000.

On April 5, 2000, petitioner exercised option No. 117 and purchased all 32,000 shares of Ariba common stock for $0.0938 per share, or a total price of $3,002. The shares had a FMV of $102 per share and a total FMV of $3,264,000 at the date of exercise.

Ariba transferred to petitioner share certificates for the 17,333 shares that had vested by April 5, 2000, and deposited the remaining 14,667 nonvested share certificates into an escrow account. As the nonvested shares vested they were transferred to petitioner.

According to the agreement and plan, when petitioner exercised the ISOs granted under option No. 117, he acquired stockholder rights in all shares subject to the ISOs including the nonvested shares held in escrow. Pursuant to the agreement, petitioner had the right to receive all "regular cash dividends" on the nonvested shares held in escrow.

2. Section 83(b) Election

Petitioner timely filed a section 83(b) election in May 2000 for the 32,000 exercised shares granted under option No. 117.[3] The section 83(b) election stated: (1) Petitioner's name, address, and Social Security number; (2) a description of the stock with respect to which the election was made; (3) the date the stock was transferred to petitioner and the taxable year in which the election was made; (4) the nature of the restriction to which the property was subject; (5) the FMV at the time the stock was transferred with respect to which the election was being

---

[3] A sec. 83(b) election must be filed no later than 30 days after the date the property was transferred. Sec. 1.83-2(b), Income Tax Regs.

made; (6) the amount paid for the stock; and (7) a confirmation that copies of the election were furnished to Ariba.

### 3. Sale and Repurchase of Stock

Petitioner's employment with Ariba was terminated on April 4, 2001. On May 30, 2001, Ariba gave petitioner notice it was exercising repurchase rights with respect to 6,667 nonvested shares granted under option No. 117 for a total purchase price of $642. On December 30, 2002, petitioner sold to a third party the remaining 25,333 shares granted under option No. 117. All of those shares had vested.

## B. Income Tax Returns and Assessments

### 1. Original Federal Income Tax Returns Prepared for 2000 and 2001

Petitioner timely filed his Form 1040, U.S. Individual Income Tax Return, for 2000, which was prepared by a certified public accountant and accepted by the Internal Revenue Service (IRS). The return reported wages of $204,722, capital gains of $691,615, dividend income of $18,135, itemized deductions of $112,744, and taxable income of $801,728. The return also reported AMTI of $4,136,705, $3,260,998 of which consisted of the gain recognized from the receipt of 32,000 vested and nonvested shares of Ariba stock under option No. 117. The return reported a regular tax of $167,139 and an AMT of $932,309 for a total tax liability of $1,099,448. After applying a foreign tax credit of $60 and withholding and estimated tax payments of $135,791, the

remaining liability due was $963,597.  Petitioner failed to remit the full amount of tax due with his return.

Respondent assessed a tax liability of $1,099,388 (IRS reduced total tax by $60 foreign tax credit) for 2000 and mailed petitioner a notice of balance due on June 4, 2001.  Petitioner has not fully paid the balance.

Petitioner filed his 2001 Federal income tax return on or about April 20, 2002, which was also prepared by a certified public accountant and accepted by the IRS.[4]  The return reported wages of $204,722, capital loss of $865, dividend income of $3,279, and, after itemized deductions of $292,525, zero taxable income.  The 2001 return also reported zero tax and zero AMT, with an overpayment of $12,720.  The return did not report gain or loss from the forfeiture of the 6,667 nonvested shares granted under option No. 117 for regular tax or AMT purposes.  Respondent assessed a tax liability of zero for 2001 on June 10, 2002.

2.   Amended Federal Income Tax Returns for 2000 and 2001

On March 25, 2003, relying on the advice of Brian G. Isaacson, a tax attorney, petitioner filed a Form 1040X, Amended U.S. Individual Income Tax Return, amending his 2000 Federal

---

[4] The return was originally sent to the IRS on approximately Mar. 30, 2002, and returned to petitioner on approximately Apr. 17, 2002, because petitioner's signature was missing.

income tax return (2000 amended return) together with an attached Form 8275, Disclosure Statement.[5]

The 2000 original return was amended to reflect petitioner's assertion that the section 83(b) election, for the nonvested stock granted under option No. 117, was invalid. Petitioner contended no AMTI was realized (the spread between FMV and the exercise price on the date of exercise) in 2000 from the exercise of the option for nonvested shares. The AMTI reported on the 2000 amended return reflected only the spread between the FMV and exercise price of vested stock on the date of exercise and the remaining shares that vested each subsequent month until the end of the 2000 tax year. As a result, the 2000 amended return substantially reduced AMT by $915,597 for a total AMT of $16,712, and reported a regular tax of $166,872, with a tax owing of $47,733, after deducting a foreign tax credit of $22 and total payments of $135,791. The 2000 amended return prepared by Mr. Isaacson was not accepted by the IRS.

---

[5] Each return and amended return Mr. Isaacson prepared included a Form 8275, Disclosure Statement, which contained Mr. Isaacson's tax opinion letter to petitioner. To avoid certain penalties, Form 8275 is used by taxpayers to disclose items or positions that are not otherwise adequately disclosed on a tax return. The form is filed to avoid an accuracy-related penalty due to disregard of rules or regulations or due to a substantial understatement of income tax for non-tax-shelter items if the return position has a reasonable basis.

On March 22, 2003, petitioner filed a Form 1040X amending his 2001 Federal income tax return (2001 amended return) together with an attached Form 8275. The return was prepared by Mr. Isaacson and was initially accepted by the IRS. It reported the same regular income and itemized deductions as the original 2001 return. However, unlike the original 2001 return, the 2001 amended return reflected petitioner's assertion that the section 83(b) election made in 2000 was invalid as to the nonvested shares. As a result, the amended return reported $340,213 of AMTI, which was the spread between FMV and the exercise price for the Ariba stock granted under option No. 117, which vested in petitioner throughout the 2001 tax year.

After deducting a $12,720 payment, the return reported a total tax liability of $88,125 consisting entirely of AMT. Petitioner failed to remit the full amount of tax due with his amended return. Respondent assessed a tax liability of $100,845 for 2001 and sent a notice of balance due on May 19, 2003. Petitioner has not fully paid the balance.

3.   Other Amended Returns for 2000 and 2001

Petitioner filed additional Forms 1040X for 2000 and 2001 based upon Mr. Isaacson's advice. Each Form 1040X was prepared by Mr. Isaacson and included Form 8275, although neither was accepted by the IRS. The 2000 Form 1040X Explanation of Changes to Income, Deductions and Credits stated:

The taxpayer's original return erroneously reported an amount due based upon an incorrect valuation and/or inclusion of stock options (both qualified and unqualified) and the incorrect application on the AMT net operating loss and AMT credit.  A list of the legal grounds supporting the amended return's valuation of stock options and/or exclusions of such options from income along with the correct application of the AMT net operating loss and AMT credit is attached to this form.  The application of the attached legal arguments to the taxpayer's stock option transactions will result in a change in the amount due for lines 1, 5 through 10, and 19 through 24 on the front of this 1040X form.  The exact amount of the refund will be determined pending the final determination of facts and the release of a technical advice memo or court decision.

### 4.  Respondent's Concession

Respondent concedes, if this Court finds petitioner's 83(b) election to be valid and the liability reported on petitioner's original 2000 return to be correct, respondent will abate petitioner's 2001 liability, which was based upon petitioner's 2001 amended return, and accept petitioner's original 2001 return.

### C.  Collection Actions

On June 30, 2003, respondent mailed petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing regarding his unpaid 2000 taxes.  Petitioner submitted Form 12153, Request for a Collection Due Process Hearing, to respondent requesting an administrative hearing under section 6330.  Petitioner also sought the removal of any liens and a temporary reprieve from collection activity, pending the release of a technical advice

memorandum by the IRS regarding the issues surrounding petitioner's stock acquisitions.

On September 4, 2003, respondent mailed to petitioner a Final Notice of Intent to Levy with respect to petitioner's 2001 tax liability. Petitioner's counsel, Mr. Isaacson, wrote to respondent and requested an administrative hearing.

Appeals Officer Lawrence Dorr conducted a telephonic hearing with Mr. Isaacson on December 3 and 5, 2003. Mr. Dorr declined to consider petitioner's request for relief and issued Notices of Determination Concerning Collection Actions for the years at issue on January 15, 2004, and February 5, 2004, respectively. In the determination, Mr. Dorr found "there was no mechanism in the Collection Due Process venue for withholding collection in this circumstance". Mr. Dorr did not review the underlying liability for the years at issue.

Petitioner timely filed a petition for lien or levy action with the Court on February 18, 2004. On August 19, 2004, this case was set for trial during the January 24, 2005, Trial Session in Seattle, Washington. On October 27, 2004, respondent moved for a continuance and remand. On December 8, 2004, the Court retained jurisdiction and remanded this case to respondent's Appeals Office for another administrative hearing to consider petitioner's underlying tax liabilities for the years at issue.

On January 6, 2005, this case was reassigned to Appeals Officer Lenora Miles. On March 2, 2005, Mr. Isaacson sent Ms. Miles a written explanation of petitioner's position. On March 4, 2005, Ms. Miles held an administrative hearing with Mr. Isaacson, during which he argued: (1) Petitioner's section 83(b) election was invalid; (2) even if the section 83(b) election were valid, petitioner could apportion a lesser value to the nonvested shares to reflect Ariba's repurchase at cost; (3) even if the section 83(b) election were valid, it could be revoked due to mistake of fact;[6] (4) AMT capital losses are not limited by section 1211; and (5) AMT capital losses can be carried back as an AMTNOL.

After considering petitioner's arguments, on April 5, 2005, Ms. Miles sent a letter to petitioner setting forth her determination that there was no basis for settlement. On May 10, 2005, respondent issued a Supplemental Notice of Determination Concerning Collection Actions to petitioner regarding the years at issue. Respondent determined the filing of the notice of Federal tax lien and the proposed levy action with respect to the unpaid assessments for the years at issue were appropriate.

On June 3, 2005, this case was calendared for trial during the October 31, 2005, Trial Session in Seattle, Washington. At

---

[6] Petitioner abandoned the second and third arguments.

trial the parties agreed to submit this case fully stipulated under Rule 122.

## Discussion

A.  Standard of Review

To determine the correct standard of review in a case instituted under sections 6320 and 6330, the Court must first decide whether petitioner's underlying tax liability is properly at issue.  Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  The term "underlying tax liability" under section 6330(c)(2)(B) includes amounts self-assessed under section 6201(a), together with penalties and interest.  Sec. 6201(a)(1); Montgomery v. Commissioner, 122 T.C. 1, 9 (2004); sec. 301.6203-1, Proced. & Admin. Regs.

The amount of the underlying tax liability may be placed at issue if the taxpayer did not receive a statutory notice of deficiency or otherwise have an opportunity to dispute the tax liability.  Sec. 6330(c)(2)(B); see Behling v. Commissioner, 118 T.C. 572, 576-577 (2002).  In this case, petitioner was not issued a notice of deficiency and did not have a prior opportunity to dispute his tax liabilities for 2000 and 2001.  Therefore, the proper standard of review for the arguments challenging the underlying tax liability is de novo.  Sego v. Commissioner, supra at 609-610.

B.    ISOs Generally

Section 421(a) provides, if the requirements of section 422(a) are met,[7] a taxpayer does not recognize income for regular income tax purposes either upon the granting[8] of an ISO to him or when the stock is transferred[9] to the taxpayer upon exercise of an ISO.  The recognition of income is deferred until the disposition of the stock.[10]  Sec. 421(a); sec. 14a.422A-1, Q&A-1, Temporary Income Tax Regs., 46 Fed. Reg. 61840 (Dec. 21, 1981). Because of the application of section 421(a), when petitioner was granted and exercised option No. 117, he did not recognize income for regular tax purposes.  If section 421 applies, section 83 does not.  Sec. 83(e)(1).

C.    Section 83 Impact on the Exercise of ISOs for AMT Purposes

However, section 421 does not apply to AMT.  Sec. 56(b)(3). Because it does not apply, section 83 controls the determination

---

[7] At all times from the date of granting the option until 3 months before the date of exercise, the option holder must be an employee of the company granting the option.  Sec. 422(a)(2).

[8] The date on which a ISO is granted is the date on which all corporate action necessary for the grant of the ISO is completed.  Sec. 1.421-7(c)(1), Income Tax Regs.

[9] For purposes of secs. 421 through 424, the term "transfer" means the transfer of ownership or substantially all rights of ownership of a share of stock to an individual pursuant to his exercise of a statutory option.  Sec. 1.421-7(g), Income Tax Regs.

[10] A disposition of ISO stock generally means any sale, exchange, or gift of, or transfer of legal title to, the stock. Sec. 424(c)(1).

of what income the taxpayer recognizes for AMTI purposes.  See sec. 56(b)(3); Speltz v. Commissioner, 124 T.C. 165, 178 (2005), affd. 454 F.3d 782 (8th Cir. 2006); sec. 1.83-7(a), Income Tax Regs.

Section 83(a) generally requires a taxpayer to recognize as AMTI the spread between the stock's FMV and the exercise price when a taxpayer is transferred a share of stock pursuant to the exercise of an ISO and its FMV exceeds the exercise price on the date of exercise.  Secs. 55(b)(2), 56(b)(3), 83(a); Tanner v. Commissioner, 117 T.C. 237, 242 (2001), affd. 65 Fed. Appx. 508 (5th Cir. 2003).  A taxpayer generally will not recognize income for AMT purposes under section 83(a) if the stock included in an ISO is subject to a substantial risk of forfeiture on the date of exercise.  Sec. 83(a).

Pursuant to section 83(a), when petitioner exercised option No. 117, he would recognize as AMTI $1,766,340,[11] the excess of the vested stock's FMV over its exercise price on the date of

---

[11] The FMV of the vested shares on the date of exercise was $1,767,966 (17,333 (vested shares on date of exercise) x $102 (FMV per share of stock) = $1,767,966 (total FMV)).

The vested shares exercise price on the date of exercise was $1,626 (17,333 (vested shares on date of exercise) x $0.0938 (exercise price per share) = $1,626 (total exercise price of vested shares)).

The AMTI recognized from exercising the vested shares was $1,766,340 ($1,767,966 (total FMV of the vested shares) - $1,626 total exercise price of the vested shares) = $1,766,340)).

exercise.  Absent a section 83(b) election, petitioner would not recognize as AMTI, $1,496,034,[12] the same spread for the nonvested shares because those shares were subject to a substantial risk of forfeiture; i.e., Ariba's right to repurchase the nonvested shares.

Section 83(b) allows a taxpayer to elect to include in income in the year of receipt the excess of the value of the stock subject to a substantial risk of forfeiture (determined without regard to any restriction other than a nonlapse restriction)[13] over any amount paid for the stock.  Although a taxpayer who makes a section 83(b) election after exercising ISOs will not recognize income for regular tax purposes (because section 421 applies to the transfer), the taxpayer will recognize ordinary income for AMT purposes.  If petitioner's section 83(b) election was validly made, petitioner would recognize as AMTI,

---

[12] The FMV of the nonvested shares on the date of exercise was $1,496,034 (14,667 (nonvested shares on date of exercise) x $102 (FMV per share of stock) = $1,496,034 (total FMV)).

The vested shares exercise price on the date of exercise was $1,376 (14,667 (vested shares on date of exercise) x $0.0938 (exercise price per share) = $1,376 (total exercise price of vested shares)).

The AMTI recognized from exercising the vested shares was $1,494,658 ($1,496,034 (total FMV of the vested shares) – $1,376 total exercise price of the vested shares) = $1,494,658)).

[13] A nonlapse restriction is a permanent limitation on the transferability of property.  Sec. 1.83-3(h) and (i), Income Tax Regs.

$3,260,998,[14] the excess of the vested and nonvested stock's FMV over its exercise price on the date of exercise.[15]

There is no dispute section 421 applies to the grant and exercise of option No. 117 and that no income for regular income tax purposes was recognized in 2000 from the exercise of ISOs. There also is no dispute that petitioner's section 83(b) election complied with the procedural requirements set out in section 1.83-2, Income Tax Regs.[16]  Petitioner contends, however, the section 83(b) election was invalid as to the nonvested Ariba stock because the nonvested shares were not legally transferred to him, which results in his not having to recognize as AMTI the excess of the FMV of the nonvested stock on the date of exercise over the exercise price until the underlying shares vested; i.e., the substantial risk of forfeiture lapsed.

---

[14] $3,264,000 (total FMV) - $3,002 (total exercise price) = $3,260,998.

[15] When a sec. 83(b) election is made, the taxpayer is betting that the value of the stock will continue to appreciate. The purpose of making a sec. 83(b) election is to accelerate recognition of ordinary income when the stock's FMV is comparatively low, thereby eliminating the chance of having to recognize a larger amount of ordinary income when the stock is no longer subject to a substantial risk of forfeiture.  But, the election can backfire if the stock depreciates rather than appreciates over that period or if the stock is forfeited, in which event sec. 83(b) bars the deduction of the amount previously recognized as income.  Having gambled and lost, petitioner now wants to invalidate his own election.

[16] Petitioner abandoned his argument that he revoked his sec. 83(b) election pursuant to sec. 1.83-2(f), Income Tax Regs.

D.   Whether the Transfer of Nonvested Stock Pursuant to the
     Section 83(b) Election Was Valid

     1.   Section 83(b) and the California Commercial Code

Petitioner argues he did not receive a beneficial ownership
interest in the nonvested stock granted under option No. 117 on
the date of exercise because he was not a holder in due course
under the California law.  Cal. Com. Code sec. 3203 (West 2002).
Accordingly, petitioner reasons his section 83(b) election was
invalid.

Stock is property for purposes of section 83.  Childs v.
Commissioner, 103 T.C. 634, 648-649 (1994), affd. without
published opinion 89 F.3d 856 (11th Cir. 1996); sec. 1.83-3(e),
Income Tax Regs.  Property is "transferred" for purposes of
section 83(b) when a taxpayer acquires a beneficial ownership
interest in the property (disregarding any lapse restrictions).
Facq v. Commissioner, T.C. Memo. 2006-111; sec. 1.83-3(a)(1),
Income Tax Regs.  A beneficial owner is one who does not have
title to property but has rights in the property which are
equivalent to normal incidents of ownership.  Sec. 1.83-3(a)(1),
Income Tax Regs.; see Hilen v. Commissioner, T.C. Memo. 2005-226;
United States v. Tuff, 359 F. Supp. 2d 1129, 1133 (W.D. Wash.
2005); Miller v. United States, 345 F. Supp. 2d 1046, 1050 (N.D.
Cal. 2004).  Beneficial ownership is identified by a taxpayer's
command over property or enjoyment of its economic benefits.
Yelencsics v. Commissioner, 74 T.C. 1513, 1527 (1980).  A sale or

transfer occurs when a taxpayer acquires a beneficial ownership interest in property rather than meeting the technical requirements for a transfer of an instrument under State law. See id.; Schnurr v. Commissioner, T.C. Memo. 1989-275.

According to the agreement and plan, when petitioner exercised the ISO granted under option No. 117, he acquired stockholder rights in all exercised shares including the nonvested shares held in escrow. Pursuant to the agreement, petitioner also was entitled to receive all regular dividends on the nonvested shares held in escrow. Because petitioner acquired beneficial ownership of the nonvested stock held in escrow upon the exercise of the ISO granted under option No. 117, the nonvested shares were transferred to petitioner within the meaning of section 1.83-3(a)(1), Income Tax Regs.

2.   An Event Certain To Occur

Petitioner argues the transfer of the nonvested stock was ineffective pursuant to section 1.83-3(a)(3) and (5), Income Tax Regs., because his termination of employment from Ariba was certain to occur and upon his termination he was required to surrender the nonvested stock for its option price instead of FMV.

Section 1.83-3(a)(3) and (5), Income Tax Regs., states:

(3) Requirement that property be returned. Similarly, no transfer may have occurred where property is transferred under conditions that require its return upon the happening of an event that is certain to

occur, such as the termination of employment. In such a case, whether there is, in fact, a transfer depends upon all the facts and circumstances. Factors which indicate that no transfer has occurred are described in paragraph (a) (4), (5), and (6) of this section. * * * .

*       *       *       *       *       *       *

(5) Relationship to fair market value. An indication that no transfer has occurred is the extent to which the consideration to be paid the transferee upon surrendering the property does not approach the fair market value of the property at the time of surrender. * * * .
[Emphasis added.]

Whether property is "transferred under conditions that require its return upon the happening of an event that is certain to occur", depends on a facts and circumstances analysis.[17] Sec. 1.83-3(a)(3), Income Tax Regs. Section 1.83-3(a)(5), Income Tax Regs., is one factor to consider when determining whether a valid transfer occurred. However, it is unnecessary to reach the facts and circumstances analysis in cases where a "condition certain to occur" has not been established.

Although the restriction placed upon petitioner's nonvested shares is conditioned upon his termination, all the stock could

---

[17] The factors considered indicative that no transfer has occurred, include the following: (1) The extent to which the arrangement is similar to an option, sec. 1.83-3(a)(4), Income Tax Regs.; (2) the extent to which the consideration to be paid the transferee upon surrender is less than the FMV of the property, sec. 1.83-3(a)(5), Income Tax Regs.; and (3) the extent to which the transferee does not incur the risk of a beneficial owner (i.e., the extent to which the transferee does not bear the risk of loss with respect to the investment as well as the opportunity for gain), sec. 1.83-3(a)(6), Income Tax Regs.

have vested in petitioner before he was terminated. All ISOs were granted to petitioner pursuant to a lapse restriction which required petitioner to be employed by Ariba for 1 year for 25 percent of the shares to vest and another 3 years for the remaining 75 percent to vest. Once the stock petitioner acquired upon the exercise of option No. 117 had vested, petitioner was not required to return the shares under any condition.

Because the condition under which petitioner was required to return the stock was not permanent, i.e., it was a lapse restriction, it was not certain that petitioner's services would be terminated before the stock vested. See sec. 1.83-3(a)(7), Example (1) and (3), Income Tax Regs.[18] The Ariba stock was not transferred on the date of exercise under a condition that was

---

[18] Example (1). On Jan. 3, 1971, X corporation sells for $500 to S, a salesman of X, 10 shares of stock in X corporation with a fair market value of $1,000. The stock is nontransferable and subject to return to the corporation (for $500) if S's sales do not reach a certain level by Dec. 31, 1971. Disregarding the restriction concerning S's sales (since the restriction is a lapse restriction), S's interest in the stock is that of a beneficial owner, and therefore a transfer occurs on Jan. 3, 1971.

In contrast to petitioner and the taxpayer in Example (1), the taxpayer described in Example (3), sec. 1.83-3(a)(7), Income Tax Regs., exemplifies a situation where the taxpayer's stock is subject to a nonlapse restriction, requiring the taxpayer to return the stock upon termination of employment (which is always certain to occur) and without the option to acquire ownership of the stock before termination. Thus, in Example (3) the stock will be returned "upon the happening of an event that is certain to occur" because termination is certain to occur, and the taxpayer will never have the opportunity to keep the shares after termination.

certain to occur. It follows that consideration of section 1.83-3(a)(5), Income Tax Regs., is unnecessary because the prerequisite condition was not satisfied. Accordingly, the stock was properly transferred to petitioner pursuant to section 83(b) when petitioner exercised option No. 117.[19]

After petitioner exercised option No. 117 on April 5, 2000, he made a timely section 83(b) election applicable to all the nonvested stock subject to the employment restriction. As a result, he recognized AMTI in 2000 to the extent the FMV of the underlying shares of stock on the date of exercise exceeded the option price. See sec. 83.

E.  Claim of Right

If the section 83(b) election is valid, petitioner argues that because he forfeited 6,667 shares of nonvested Ariba stock for its exercise price on May 30, 2001, he is entitled to a 2001 tax deduction under section 1341(a) equal to the 2000 AMT attributable to the inclusion of AMTI of $679,825.

A taxpayer qualifies for a deduction under section 1341 if (1) an item was included in the taxpayer's gross income in a

---

[19] Petitioner also argues that the transfer of nonvested stock was invalid because it was subject to the claims of Ariba's creditors. Petitioner cites the definition of property as his authority. Sec. 1.83-3(e), Income Tax Regs. There is nothing in the record to support petitioner's claim that creditors of Ariba could reach petitioner's shares of nonvested stock while in escrow. Furthermore, shares of stock clearly constitute property, and the nonvested shares were transferred to petitioner subject to a lapse provision.

prior year; (2) it appeared that the taxpayer had an unrestricted right to the item in the prior year; and (3) the taxpayer is entitled to a deduction (in excess of $3,000) under another section of the Code for the loss resulting from the restoration of the item to another in the current tax year.  Sec. 1341(a); sec. 1.1341-1(a)(1), Income Tax Regs.

Section 1.1341-1(a)(2), Income Tax Regs., continues with the definition:

> "income included under a claim of right" means an item included in gross income because it appeared from all the facts available in the year of inclusion that the taxpayer had an unrestricted right to such item, and "restoration to another" means a restoration resulting because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item (or portion thereof).

Although petitioner may recognize losses on the sale of stock for AMT purposes, there is no deduction for a loss attributable to a forfeited nonvested share of stock subject to a section 83(b) election.  Pursuant to section 83(b)(1), if property to which a section 83(b) election is made "is subsequently forfeited, no deduction shall be allowed in respect of such forfeiture."

Similarly, pursuant to section 1.83-2(a), Income Tax Regs.:

> If property for which a section 83(b) election is in effect is forfeited while substantially nonvested, such forfeiture shall be treated as a sale or exchange upon which there is realized a loss equal to the excess (if any) of--

(1) The amount paid (if any) for such property, over,

(2) The amount realized (if any) upon such forfeiture.

If such property is a capital asset in the hands of the taxpayer, such loss shall be a capital loss. * * * .

Petitioner is not a securities dealer, and he held his Ariba shares strictly as an investor. Stock is a capital asset. Sec. 1221(a)(1). Thus, petitioner's nonvested Ariba stock was a capital asset in his hands, and any loss realized upon its forfeiture is characterized as a capital loss. See sec. 1.83-2(a), Income Tax Regs.

Furthermore, the phrase "amount paid" in section 1.83-2(a)(1), Income Tax Regs., refers "to the value of any money or property paid for the transfer of property to which section 83 applies". Sec. 1.83-3(g), Income Tax Regs. Therefore, pursuant to sections 1.83-2(a) and 1.83-3(g), Income Tax Regs., a taxpayer is barred from recognizing as a capital loss the previous amount included as compensation when nonvested stock subject to a section 83(b) election is subsequently sold for less than its FMV. Theophilos v. Commissioner, 85 F.3d 440 (9th Cir. 1996), revg. T.C. Memo. 1994-45.

Petitioner paid Ariba $625 in 2000 to exercise the option to acquire 6,667 shares of subsequently forfeited stock and elected to recognize the excess of the FMV over the exercise price on the date of exercise as compensation for AMT purposes. Ariba paid petitioner $625 to repurchase the 6,667 shares in 2001, causing

petitioner to realize an AMT capital loss of $679,825.  However, pursuant to section 83(b)(1) and section 1.83-2(a), Income Tax Regs., petitioner cannot recognize the $679,825 AMT capital loss.

Because petitioner fails to satisfy the requirement under section 1341(a) that the taxpayer is entitled to a deduction under another section of the Code for the loss, we need not consider whether petitioner satisfies other requirements of section 1341, e.g., whether petitioner had an unrestricted right in the nonvested Ariba stock in the year he made the section 83(b) election.

F.   Carryback of AMT Capital Losses

Petitioner argues he may carry back capital losses pursuant to section 1211 to reduce the amount of his AMTI for 2000 and that he may carry back an AMTNOL to reduce the amount of his AMTI for 2000.  Similar arguments, by the same counsel, have been rejected in Merlo v. Commissioner, 126 T.C. 205 (2006), Montgomery v. Commissioner, 127 T.C. 43 (2006), and Spitz v. Commissioner, T.C. Memo. 2006-168.  Consistent with these cases, the Court finds petitioner may not carry back his AMT capital losses to reduce his AMTI in 2000, and petitioner may not claim an AMTNOL carryback to reduce his AMTI for 2000.  See Merlo v. Commissioner, supra.

In reaching these holdings, the Court has considered all arguments made and, to the extent not mentioned, concludes that they are moot, irrelevant, or without merit.

To reflect the foregoing and the concessions of the parties,

<u>Decision will be entered for respondent</u>.